UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES E. KIRBY,

No. 14-13025

Plaintiff,

Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_____/

### OPINION AND ORDER

Plaintiff James E. Kirby ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff has filed a motion for remand and Defendant has filed a motion for summary judgment. For the reasons set forth below, Defendant's motion for summary judgment [Dock. #16] is GRANTED and Plaintiff's motion for remand [Dock. #12] is DENIED.

### I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on November 18, 2009, alleging disability as of June 14, 2008 (Tr. 225). Upon denial of the claim, Plaintiff requested an administrative hearing, held June 29, 2011 in Tulsa, Oklahoma (Tr. 84). Plaintiff, appearing by teleconference, testified (Tr. 88-102), as did Vocational Expert ("VE") A Graham Marlowe (Tr. 102-106). On

-1-

August 8, 2011, Administrative Law Judge ("ALJ") Charles Headrick found that Plaintiff was not disabled (Tr. 121-122).  On December 12, 2012, the Appeals Council remanded the case for additional fact-finding for consideration of Plaintiff's back condition, the role of obesity in assessing his functional limitations, and whether the alleged need to change positions and/or elevate his leg over the course of the work day would reduce the number of available jobs (Tr. 127-129).

On April 19, 2013, ALJ Paul W. Jones presided at a second hearing held in Lansing, Michigan (Tr. 28).  Plaintiff, represented by attorney Patrick J. Marutiak, testified, (Tr. 32-67), as did VE Toni McFarland (Tr. 68-75).  On May 8, 2013, ALJ Jones found that Plaintiff was not disabled (Tr. 22-24).  On June 23, 2014, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed suit in this Court on August 4, 2014.

## II.    BACKGROUND FACTS

Plaintiff, born December 3, 1965, was 47 at the time of the second administrative decision (Tr. 24, 225).  He received a GED and worked previously as a iron worker supervisor until sustaining injuries in a boating accident (Tr. 266, 271).  He alleges disability as a result of knee problems resulting from the boating accident (Tr. 265).

### A.  Plaintiff's Testimony at the April 19, 2013 Hearing

Plaintiff offered the following testimony:

He lived with his wife and youngest son (Tr. 33).  His wife worked as a cook at a nursing home (Tr. 34).  He was no longer able to perform the lifting or sitting requirements

-2-

of his former job (Tr. 35).  Pain due to nerve damage required him to change positions frequently (Tr. 35).  He had been advised to keep his leg above heart level by his doctor (Tr. 37).  He also experienced daytime drowsiness due to Vicodin use (Tr. 38).

Plaintiff stood 5' 8" and weighed approximately 220 pounds (Tr. 41).  He left school in 10th grade but later received a GED (Tr. 42).  He could read and write "somewhat" (Tr. 42).  He did not know how to use a computer (Tr. 44).  He could do "basic" math (Tr. 44). He did not know why the alleged onset of disability was June 14, 2008, given that the accident did not occur until August 3, 2008 (Tr. 51-52, 60).  He applied for and received unemployment benefits after the accident (Tr. 53-54).

In response to questioning by his attorney, Plaintiff stated that he underwent right knee surgery as a result of the accident (Tr. 60).  He testified that his former work required him to lift 50 pounds occasionally and 20 frequently (Tr. 63).  He admitted to daily marijuana use, stating that marijuana reduced his need for pain medication (Tr. 65-66).

Plaintiff alleged back pain after standing for half an hour or more (Tr. 78).  He needed to recline his leg above heart level three times a day for half an hour to an hour (Tr. 78-79). On a "bad" day, he spent most of the day reclining (Tr. 79).  He experienced bad days three to four days a week (Tr. 79).  Sitting, standing, and dampness also increased the knee pain (Tr. 79).  His knee condition had worsened since the accident (Tr. 80).  He used a cane when walking more than 15 feet (Tr. 81).

-3-

## B.  Medical Records

### 1.  Treating Records

An August, 2008 MRI of the left knee showed an "injury of the medial collateral ligament with a medial meniscus tear and infra patellar tendinosis" (Tr. 302-303).  An x-ray of the right knee showed degenerative osteoarthritis with joint effusion (Tr. 304).  In May, 2009, Plaintiff underwent a left knee arthroscopy (Tr. 350-351).  He reported good results from the procedure (Tr. 363).  The following month, Plaintiff underwent right knee arthroplasty (Tr. 323, 329, 333, 340-341).  The same month, he reported that he smoked one pack of cigarettes a day; drank three to four beers every day; and used marijuana occasionally (Tr. 338).  Treating records note a "history of alcoholism" (Tr. 339).  The following month, Plaintiff reported severe knee pain "uncontrolled by . . . OxyContin and Percocet" (Tr. 323, 362).  Hospital treating staff noted moderate to severe right knee swelling (Tr. 323-324, 359).

August, 2009 treating notes state that Plaintiff's knee condition was "markedly improved" (Tr. 355).  He reported exercising by walking "up and down hills . . ." (Tr. 356).  In September, 2009, Plaintiff exhibited excellent range of right knee motion (Tr. 354).  He was advised to use knee pads (Tr. 354).  In October, 2009, Norman E. Walter, M.D. noted that Plaintiff had "thrown in the towel" and was now applying for disability (Tr. 353).  An x-ray of the right knee showed "no change in [the] position of the prosthesis" (Tr. 353).  Dr. Walter advised Plaintiff that he took "too much" Vicodin ES, recommending non-narcotic alternatives (Tr. 353).  Dr. Walter opined that Plaintiff would "not be able to return to work

-4-

unless restricted employment is available" (Tr. 353).

In March 29, 2010, Dr. Walter observed an excellent range of right knee motion (Tr. 385). Plaintiff reported generally "good pain relief," but noted that he used "occasional narcotics" (Tr. 385). Dr. Walter cautioned Plaintiff against overuse of Vicodin (Tr. 385). An April, 2010 imaging of the right knee showed "some mild opening to varus stress. . ." (Tr. 386). In August, 2010, Dr. Walter gave Plaintiff a one month supply of Vicodin, noting the possibility of "drug seeking behavior" (Tr. 401). In September, 2010, Dr. Walter referred Plaintiff to a pain specialist for further requests for narcotics (Tr. 399). He opined that Plaintiff's "days of going back to iron working are over with bilateral knee replacements" (Tr. 399).

In February, 2011, orthopedist Vic Gibson, D.O. noted imaging studies showing degenerative joint disease of the left knee and lumbar spine and post-arthroplasty pain of the right knee (Tr. 398). Dr. Gibson noted a possible diagnosis of patella tendinitis of the right knee (Tr. 394). He prescribed physical therapy (Tr. 394). A March, 2011 MRI of the lumbar spine showed degenerative disc disease but no herniation (Tr. 396-397, 390). Dr. Gibson noted that Plaintiff was "getting better with physical therapy" (Tr. 390). The same day, he opined that Plaintiff needed "to elevate leg periodically throughout the day as needed" (Tr. 387).

In February, 2013, Gerald Drelinski, M.D. completed a medical source statement, finding that Plaintiff was limited to lifting less than 10 pounds on an occasional basis and

less than two hours walking or standing in an eight-hour workday (Tr. 405). He found that

Plaintiff would be required to change positions at will and needed "to sit and elevate [right]

leg" periodically (Tr. 406). Dr. Drelinski precluded Plaintiff from all crouching, crawling,

and stooping and limited him to occasional climbing, balancing, and kneeling (Tr. 406). He

found that Plaintiff was limited to occasional reaching and handling (Tr. 407).

## 2. Consultative and Non-Examining Sources

In January, 2010 J.L. Tofaute, M.D. performed a consultative examination on behalf

of the SSA, noting Plaintiff's report that he was able to drive for only short distances and was

unable to stand or sit for more than 30 minutes or walk for more than 20 (Tr. 365-366).

Plaintiff walked with a limp but stated that he did not use a cane regularly (Tr. 365). He

exhibited knee stability but a reduced range of right knee motion (Tr. 366, 369).

In March, 2010, Stephen E. Wood, M.D. performed a non-examining Residual

Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff was capable of

lifting 20 pounds occasionally and 10 frequently; sitting for six hours and standing or

walking for two in an eight-hour period; and unlimited pushing and pulling (Tr. 371). He

found that Plaintiff was precluded from all climbing of ladders, ropes, and scaffolds; but

could climb stairs and ramps, stoop, kneel, crouch, and crawl on an occasional basis; and

balance frequently (Tr. 372). Dr. Wood concluded that Plaintiff could work "with normal

breaks" (Tr. 371).

The following month, Carol L. Van der Harst, M.D. performed a one-time

-6-

examination, noting Plaintiff's history of right knee problems since sustaining injuries in the August, 2008 boating accident (Tr. 380). She found that the right knee trauma resulted in "significant functional impairment losses" (Tr. 383). She found that Plaintiff's back problems exacerbated the knee condition (Tr. 382-383). She concluded that while additional therapy could improve Plaintiff's gait, he was unable to return to his position as an iron worker (Tr. 383).

### C.  VE Testimony, April 19, 2013

Citing the *Dictionary of Occupational Titles,* (*"DOT"*), VE Toni McFarlane classified Plaintiff's former jobs as a structural steel worker as skilled and exertionally heavy and work as a "reinformed steel placing supervisor as skilled and light (heavy as described by Plaintiff)[1] (Tr. 72). The ALJ posed the following question,  describing a hypothetical individual of Plaintiff's age, education, and work experience,:

> [Assume a person . . . who's able to do a limited light kind of work, and by that I mean lifting up to 20 pounds occasionally, lifting or carrying up to 10 pounds frequently; but standing or walking for only about two hours and sitting for up to six hours in an eight hour work day with normal breaks. This person requires a sit/stand option that allows a person to sit or stand alternatively at will provided this person is not off task for more than 10 percent of the work period . . . . [N]ever climbing ladders, ropes, or scaffolds,

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

occasionally climbing ramps or stairs; occasionally stooping, kneeling, crouching, and crawling; frequently balancing; and avoiding moderate exposure to hazards, such as the operation of control of moving machinery and unprotected heights; and no other limitations (Tr. 73).

Based on the hypothetical limitations, the VE found that the individual would be unable to perform Plaintiff's past relevant work, but could perform the light, unskilled work of an information clerk (55,000 jobs in the entire country); parking lot attendant (41,500); and inspector/hand packager (Tr. 113,900) (Tr. 74-75).

### D.  The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "right knee osteoarthritis, status-post replacement surgery; left knee chondromalacia, status-post arthroplasty; and obesity" but that the none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17).  The ALJ found that Plaintiff's degree of psychological limitation was mild (Tr. 16). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [C]laimant requires the option to sit or stand alternatively, at will, provided he is not off task more than 10% of the work period.  He can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and frequently balance.  Claimant must avoid moderate exposure to hazards such as the operational control moving machinery and unprotected heights (Tr. 17).

The ALJ discounted some of Plaintiff's allegations of limitation, noting that in January, 2010, Plaintiff reported that he seldom used a cane (Tr. 21).   The ALJ cited

February, 2011 records showing no right knee pain or instability (Tr. 21). He rejected Dr. Gibson's finding that Plaintiff needed to elevate the leg "periodically throughout the day as needed," noting that Dr. Gibson "did not specify which leg, how far to elevate the leg, and how long to elevate the leg" (Tr. 21).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).


## V.  ANALYSIS

### The Appeals Council Remand Order

Plaintiff contends that ALJ Jones failed to comply with the December 12, 2012 Appeals Council Remand order directing, among other things, consideration of Plaintiff's alleged need to elevate the right leg and obesity.  *Plaintiff's Brief, Docket #12* (citing Tr.

127-129).

### A. Elevating the Right Leg

Plaintiff argues that his purported need to elevate his right leg above heart level was improperly omitted from the RFC. *Plaintiff's Brief* at 5-8.

The December 12, 2012 Appeals Council order noted that Dr. Gibson's March, 2011 finding of the need for leg elevation "was not addressed" in ALJ Headrick's opinion (Tr. 128). ALJ Jones considered but rejected the alleged need for leg elevation, noting that Dr. Gibson's opinion (Tr. 387) was not credible (Tr. 21). In noting that Dr. Gibson's opinion of extreme limitation was not well supported, the ALJ observed that "Dr. Gibson indicated that claimant needs to elevate leg periodically throughout the day as needed, but did not specify which leg, how far to elevate the leg and how long to elevate leg" (Tr. 21). As to Dr. Dreslinski's medical source statement which included the restriction of right leg elevation, the ALJ accorded "little weight as there are no objective medical records to support his statement"[2] (Tr. 22).

First, it is important to note that while the Appeals Council ordered the ALJ to address the allegations of the need for leg elevation, it did not require him to *adopt* them. Further, the ALJ's rejection of Dr. Gibson's "leg elevation" opinion is sufficiently supported and

---

[2]The Court likewise notes that the transcript does not contain any treating notes by Dr. Dreslinski. Plaintiff states that Dr. Dreslinski was in fact his treating physician at the time of assessment but does not provide treating records or other evidence to support his claim. *Plaintiff's Brief* at 7, fn 3.

explained.  While Plaintiff sought treatment for knee swelling one month after undergoing the right knee arthroplasty (Tr. 323-324) none of the subsequent records suggest the long-term need for leg elevation, much less elevation above heart level.  As noted by the ALJ, Plaintiff's claim of  substantial lumbar spine problems affecting the lower extremities was undermined by an MRI of the lumbar spine showing no disc herniation (Tr. 20).  The ALJ also observed that Plaintiff experienced improvement in symptoms by the use of anti-inflammatory agents and physical therapy (Tr. 20).

Plaintiff also argues that in light of the Dr. Gibson's ambiguous finding of a need for leg elevation, the ALJ was required to recontact him for clarification.  *Plaintiff's Brief* at 7 (*citing* 20 C.F.R. § 404.1512(e)).  However, the ALJ was not obligated to recontact Dr. Gibson given that substantial evidence otherwise supported the finding that Plaintiff did not require leg evaluation.  "[A]n Administrative Law Judge need recontact a medical source only if the evidence received from that source is inadequate for a disability determination."  *DeBoard v. Commissioner of Social Sec.,* 2006 WL 3690637, *5 (6th Cir. December 15, 2006); § 404.1512(e). "Absent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Commissioner of Social Sec.*, 2008 WL 828861, *4 (W.D.Mich. March 26, 2008) *(citing Johnson v. Barnhart*, 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005); SSR 96–5p.

The ALJ did not err in determining that the alleged long-term need to elevate the leg was not credible.  While Plaintiff experienced significant edema the month after right knee

surgery, subsequent treating records indicate that the condition resolved within a year of surgery (Tr. 353, 385). His claim that he had been advised by his physician to elevate his leg above heart level (Tr. 37, 78-79) is unsupported by any of the treating or consultative records. His testimony that he could remain at a hunting blind for two hours (presumably poised to shoot a deer) and was able to drive significant distances (albeit with cruise control) is inconsistent with the purported need to elevate his knee above heart level at frequent intervals (Tr. 81). Moreover, the ALJ did not err in generally rejecting Plaintiff's allegations of physical limitation. Plaintiff testified that he required the use of a cane while walking more than 15 feet yet admitted that he left the cane in car on the day of the hearing although the distance from his car to the hearing room was presumably well over 15 feet (Tr. 365). His alleged need for a cane to walk any distance also stands at odds with his admission to Dr. Tofaute that he did not require the use of cane on a regular basis (Tr. 365).

Because the rejection of the leg elevation claims is adequately supported and explained, the administrative findings will remain undisturbed.

### B. Obesity

On a related note, Plaintiff acknowledges that ALJ Jones mentioned the condition of obesity but erred by providing only a "boilerplate evaluation" omitting "any articulation as to how [Plaintiff's] obesity would effect the RFC." *Plaintiff's Brief* at 8-9.

SSR 02–1p classifies individuals with a Body Mass Index ("BMI") greater to or equal to 30.0 as "obese." In the instance that a claimant is found to be obese, the Commissioner

-13-

must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities. SSR 02–1p.  However, when determining the impact upon an individual's ability to function, SSR 02–1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Sec*., 359 Fed. Appx. 574, 577 (6th Cir.2009)(citation and internal quotation marks omitted).

In this case, the Appeals Council order states that Plaintiff's "obesity was not adequately considered as required by [SSR] 02-1p" in the original determination (Tr. 127). In response to the order, ALJ Jones included obesity among the "severe" impairments at Step Two, noting that Plaintiff stood 5'7" and weighed 205 at the time of Dr. Tofaute's January, 2010 consultative examination (Tr. 19).  He further observed that "additional factors concerning claimant's obesity have been duly considered in issuing [the] decision" (Tr. 21).

Plaintiff's argument that the ALJ made only a "boilerplate" acknowledgment of obesity is not well taken.   The ALJ included obesity among the Step Two impairments and elsewhere in the decision.  Notably, ALJ Jones acknowledged a greater degree of limitation than ALJ Headrick, finding that Plaintiff required a sit/stand "at will" option in the RFC in contrast to the earlier RFC allowing only "periodic" changes of position (*compare* Tr. 17, 114).  ALJ Jones' acknowledgment that Plaintiff's obesity exacerbated the other conditions, coupled with the more restrictive RFC, was responsive to the Appeals Council order to "address the effects of claimant's obesity on the claimant's activities and ability to work" (Tr.

-14-

127).

In closing, it should be noted that the decision to uphold the ALJ's findings should not be read to trivialize Plaintiff's limitations as a result of the boating accident or his inability to return to his former work.  Nonetheless, the determination that Plaintiff was not disabled from *all* work is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and will not be disturbed.  *Mullen v. Bowen*, *supra*.

### VI.   CONCLUSION

For these reasons, Defendant's motion for summary judgment [Dock. #16] is GRANTED and Plaintiff's motion for remand [Dock. #12] is DENIED.

Judgment for Defendant  will be entered.

 IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 21, 2015

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 21, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

-15-